Good morning to the panel is Thomas Sklafanyi on behalf of Alexander Johnson. There are a number of issues in this particular appeal, but I would like to address the one that I think resolves this appeal in really the most uncomplicated way, and that would be the failure of the district court to provide prior notice to the district court. The May 9th 2019 hearing that, in fact, it was really a de facto sanctions hearing or a rule 11 proceeding. But why do I say that? First of all, the law is clear this this court in an en banc opinion in Donaldson versus Clark, which was entirely devoted to the notice provisions and the concerning rule 11 made it abundantly clear. That if there is any possible violation of rule 11, that it is the obligation of the court to notify the parties, the parties being both the lawyer and the client. Now, the the question of what kind of notice should be given is certainly more particular, as the court wrote and logic would dictate when it comes to a client as opposed to a lawyer. A lawyer is always sort of on notice about rule 11 because we operate under ethically under under the obligations that a lawyer has about the filing of matters before the court. But a client is not. And so consequently, there needs to be a much more specific and direct notice that would have been given to Mr. Johnson. So what do we and of course, that was not done because what do we have in this case? What we have in this case is, is that on April the 4th of 2019, the district judge entered an order on default concerning the O'Hara's case, which was the case that was assigned to him. And in that four page written order, the judge made it abundantly clear, he specifically stated that the plaintiff had set forth well pleaded allegations in the complaint and that the that the defendant had violated the ADA. And that the therefore the motion was granted and a hearing was further hearing was set, which ultimately took place on May the 9th. And the parameters of that hearing were to determine the nature of the injunctive relief, as well as damages and attorney's fees. So when Mr. Johnson walked into court and he was ordered to be there on May the 9th, when Mr. Johnson walked into court on May the 9th, he walked in thinking that the court was going to address the issue of of attorney's fees and injunctive relief. As it turned out, between April the 4th and May the 9th, the district judge did a lot of work in this case. And the work that the district judge did was he clearly had seen the billings that had been submitted by Mr. Dennett. And of course, I know this particular judge is very meticulous when it comes to lawyers submitting bills. And this lawyer should have known that Mr. Dennett should have known that. But in any event, the court it raised the court's eyebrows and which caused the judge to then take a look at what turned out to be 26 other or 24 other complaints that were similarly filed with Mr. Johnson as the plaintiff with Mr. Dennett as the lawyer. And when the judge saw that and he reviewed every one of the complaints, we know that because he stated it during the May 9th hearing. And then what ended up happening was was the 26 complaints. The judge clearly saw that that there was overbilling involved. So going into the May 9th hearing, the district court already knew that there was that that there were that there were going to be problems with overbilling. The other thing that the judge knew going in was he had read Judge Ungaro's order in a similar case in which Judge Ungaro had made a finding that that videos on gas pumps were incidental and consequently not covered by the ADA. The district judge also knew by his careful review of the 24 or 26 actually 26 complaints was that Mr. Johnson had gone to two other gas stations on the same day he went to the one in the case before the court. And finally, when when the district judge on May 30th issued his written order in which he imposed the sanctions that took place as a result of the May 9th hearing when he ordered the rule to show cause it was for the to to impose additional sanctions. So clearly we knew the district judge clearly knew that there was a possibility at the very least and really much more than that of sanctions going into the May 9th hearing. How is Mr. Johnson? How is he impacted by this? What ended up happening was he ended up really not having counsel because it was his counsel who was getting excoriated for what his counsel did. And Mr. Johnson at that point, there was clearly a conflict and and I would most respectfully suggest that the district court should have anticipated that going in that Mr. Johnson if that if in fact the court was going to, you know, put it. All right. I'm sorry. Thank you. Thank you. May it please the court. Good morning. My name is Kevin Tynan. I represent Scott Denon, who was the lawyer who was sanctioned in this proceeding. We have a very narrow issue that's different from Mr. Johnson's. Respectfully, we are requesting in our side of the proceeding that this court reverse the trial court's finding that these these gas pump cases were not frivolous and that the goal of Mr. Johnson, the client in this case, was legitimate. And we believe that the finding that these matters were frivolous impact Mr. Denon. The court could take judicial notice that he's been suspended by the Florida Bar and someday he will return and that it's our position that this finding impacts him and his future ability to practice law. It also impacts Mr. Johnson, though Mr. Slafani didn't talk about that this morning. Weren't the FICRA claims frivolous from our position? No, your honor. Wasn't that essentially stipulated by your client? In other words, I'm sorry. Yes. The second count was frivolous. I'm sorry. So when when when the judge finds that the complaint is frivolous, that is not an erroneous finding because the FICRA claim was frivolous. Everyone agrees. As to the second count, we we must concede and did below that they were premature, should not have been filed. Where is there anywhere in the district court's order where the judge said and I'm talking the sanctions order, either the first or the second one where the judge said that the ADA claim was frivolous? Because as I understood it, the judge said it was well pleaded. I don't think he found that there wasn't a potential violation of the ADA. I think in the main 30th order, he mentioned that there could be a standing issue. And he certainly dismissed the ADA claim as a sanction for frivolity based on as based on how this all proceeded, that there was a frivolous claim filed in count to overbilling as a result and some false statements made to the court, at least in the court's view. But I don't see anywhere I'm having trouble finding where there is a finding by the court that the ADA claim on the merits is frivolous. I understand your point, Judge. And again, maybe our focus has been too much on the judge's commentary during the hearings. And I'd have to go back and actually reread the whole order to make sure. But certainly the flavor of what the judge was doing, his commentary through the process, the insertion of his own personal opinion as to what was occurring, that's why our focus is there. If we're having what essentially is a reputation claim, which is sort of what you're making, I don't know how flavor and commentary is reversible by us. Certainly we can reverse an order or a finding, but I'm just having trouble finding where there's any harm, at least in the harm that your client is worried about, here in the actual orders that were actually entered in this case, other than there clearly is a finding of frivolity with regard to count to of these claims. And Judge, the bigger picture on that too is there's also other portions of that order addressed to my client that he's going to have to live with for the rest of his career. But he left with the impression, again, based upon the gestalt of everything that happened in this proceeding, that the trial judge did believe, notwithstanding his earlier finding in granting a default, that the matter was well pled, at least as to that count. And I understand that difficulty, Your Honor. And our position simply is, and again, now as modified as Judge Luck brought up, that there is standing. It's not moot. He did, yes, my client has satisfied the orders or those parts of the sanction order that applied to him. He did take care of that. In fact, he did a lot of remediation before he was actually sanctioned. But the only matter that he has interest in now is a finding from this court that the first count, based upon the ADA, was not frivolous. And if there's no further questions, I'm surprisingly finished. Thank you very much. Thank you. Good morning. Thank you, Judge Martin. May it please the court. Jennifer Ruiz, as amicus curiae, in support of the Appalese, 27th Avenue Carafe, and the Karis Management. This court should affirm the district court's order, because it uncovered a systematic, premeditated, and deliberate abuse of the judicial process by admittingly filing frivolous claims under Florida Civil Rights Act to trigger damages, to extort quick settlements from unknowing defendants, and also filing ADA claims in which Mr. Johnson knew or maybe should have known he lacked standing. Can I ask you a question? Sure. Your Honor. Just to assume a hypothetical. If we found that it shouldn't have been dismissed at this point on the ADA claim, we could still affirm the sanctions on the basis of the FCRA issues. Is that correct, or is there something that I'm missing?  Your Honor, I would say admittingly that the knowingly filing frivolous claims under the Florida Civil Rights Act for a period above, I think the record shows five years, was, in essence, sanctionable conduct. Okay. So let me direct your attention, if I could, to the standing issue. You know, it's not entirely clear to me whether Judge Huck dismissed this on standing because he did not believe anything that Mr. Johnson said, or because he believed some of what Mr. Johnson said, but he did not find that it was sufficient to satisfy the standing requirement. If you want to address that, Phil. Yes, Your Honor. My reading of the record shows detailed findings by Judge Huck as far as the Houston factors and Lujan. As your Honors know, and I know Mr. Scalafini raises issues with the notice issues, the notice of hearing specifically said that it was to address the scope of or the ability to have, and I want to make sure, the nature of the injunctive relief. As your Honors know, under Lujan and Houston, injunctive relief in ADA claims requires a finding of standing to ensure that before permanent relief is entered and affecting future conduct, that there is actually a concrete, particularized future injury, threat of future injury. And so in doing so, I think in the way the record developed and the questions that the district judge asked is, as the record, the testimony presented itself, I think that's when some of the small red flags maybe in the beginning of the testimony that the judge had kind of became bigger red flags when Mr. Johnson could not provide specific testimony as to his intent to return to the gas stations at issue in the O'Karras case and the Karaf case, but as well as the other 24 gas stations. So let me ask you a little question about that. One of the things that I noticed when I was reading through the transcript and the orders was the comment about how, you know, there are thousands of gas stations in the area and so he couldn't establish standing. And my concern there is that because he could always use a different gas station. So he didn't have to expose himself to any alleged ADA violations. And my concern there is that, you know, I'm not aware of any case law that supports the notion that an ADA plaintiff has to shield himself from or mitigate any kind of difficulty or injury he might have as a result of a provider who fails to comply with the ADA. And so I wanted to give you a moment to address that. I think the record the issue was the concrete plans to return to that specific gas station. So like the plaintiff in Houston, where there was sufficient testimony about the supermarket that he would go to and why he would repeatedly go there and why he would have concrete plans to return to that specific market. I think that's in stark contrast to the testimony provided to the judge here where it says I don't actually Mr. Johnson admits that he does not go and visit these gas stations regularly. Actually, what he said was he there's a pharmacy that he picks up a prescription once a month and the gap. One of the gas stations is around the corner from that. And another gas station was near Zoo Miami. He has an annual pass and he goes there regularly. And, you know, I think gas stations are not the same as, for example, a restaurant where you decide beforehand which restaurant you're going to go to. I mean, especially if you're traveling 26 miles from Fort Lauderdale to a destination. I mean, it seems unlikely that one would decide ahead of time which gas station to go to. And so why is it not enough for him to show that he regularly travels in the area that is right near where the gas station is? Why isn't that enough to establish standing? Again, defer your honor to the Houston factors and that we have to have a concrete, particular lies intent to return. And so the testimony the way I read it was that there was nothing to say that this specific gas station and I'll give you a hypothetical. I go to the same gas station when I go up to the courthouse. There's a gas station. That's the one I stop at. Whether it's I like, you know, you know, the shower or whatever it is, you know, station. I can actually probably give you some testimony as I repeatedly go to this station when I travel to this area, especially if it's an area you regularly travel to. You get to know the area, especially if you're traveling from Fort Lauderdale down to Metro Zoo regularly to use your pass. You probably will know which is the gas station that you regularly go to for certain reasons. And I think you might. But I don't think you necessarily will. I mean, you know, sometimes there's a situation where someone has cheaper gas and they're right across the street from each other. And maybe, you know, you decide I'm going to go to the one that has less expensive gas today. You know, and you under the theory that you're espousing, one would have to decide for certain to go to a particular gas station, even if on that day, for example, gas was, you know, 10 cents a gallon more expensive. And, you know, I just don't think that it's sort of reality that all people necessarily select their gas station ahead of time and will not veer from that choice. So it just seems to me like a gas station might be a different kind of thing than a restaurant where you do kind of decide, OK, tonight, you know, we're in the mood for this kind of food or whatever. And, you know, you pick a particular restaurant so or you pick a particular hotel. You know that you're going there because, you know, you you have to book it in advance. A gas station just seems like it doesn't it doesn't meet that criteria. And then I have a hard time reconciling then the the requirement to seek injunctive relief that requires you to have concrete plans to visit that location in the future. Right. Well, visit the location in the future. Right. The area. Right. The area for a gas station, you know, that a gas station services is still visiting that location in the future. My reading is the actual gas station in the future. So the actual place of public accommodation, what case law do you have to support that? Because it's possible there is something that says specifically. And I'm talking about with respect to gas stations in particular. I don't have any cases on gas station in the particular just Rosenbaum. All right. Enough. Thank you. What was part of the issue on the same line of questioning was part of the issue that. Let me ask you, let me back up a second. The complaints, the 25 or 26 complaints, were they were they largely similar? The district court found that they were identical with the exception of the change of the defendant's name. What was the what was that similar allegation or identical allegation with regard to the part, the prong in Lujan that you're talking about, the future? That all 26 gas stations were part of his regular travel destination. Yeah, she said that this is part of my regular travel destination. Right. So was was part of the district court's concern that you've now sworn at 26 different places spread out in a geographical area of 30 square miles and going in different directions with, you know. Eight million people that you've now sworn that you regularly see 26 different places. Correct. One of the findings was that he visited three gas stations in the same day in very remote, very far apart areas in Miami-Dade County. And then I believe it's something like eight stations within like a three week period also spread out throughout Broward and Miami-Dade County. And that was part of the district court's evaluation that it was not plausible. His explanation, which I think the reason was we drive a lot, was the. I want to fast forward for a second, though. So I certainly the March 30th order dealt with standing and that's what we're talking about here. But that that's actually not really what we're here for because we're here on the sanctions order. What what then happened to this claim that the ADA claim that we're talking about in the in the sanctions order? And I'm talking about the first one that was issued after the July 22nd hearing. The show cause hearing took place in July 22nd. And after that, that's when I think Mr. Salfini said that the court's eyebrows were raised as to potentially being the victim of fraud. In doing its investigation, reviewing some of the documents, the court then found that the 26 gas column, the gas pump cases were in fact filed throughout the district, the southern district. And in those cases, they contained the known frivolous claim under the Florida Civil Rights Act to trigger damages. And so what was the sanction? There was many sanctions, but but with regard to the count one, what was the sanction? The sanction for the ADA count was a dismissal with prejudice, irrespective of standing, irrespective of standing. As after the July 22nd. Right. So that was due to the just so I understand. So on March 30th, the court says I'm vacating my default and entering a dismissal on that count for lack of standing. And then I'm now noticing you for a sanctions hearing. And then they have the sanctions hearing. And the court says, I find that there's a frivolity with regard to count two. And as a sanction for that, I am dismissing not only count two, but I am dismissing count one on the ground of sanctions under Rule 11 and inherent authority. Right. And it was also the bad faith conduct is because of the court made specific findings of bad faith conduct, specifically that the settlement amounts from the gas pump cases were actually being split 50 50 by Mr. Johnson and Mr. Denon as profit. And so after finding that, making those findings on the record, the court's ultimate sanction as far as the actual claims was dismissal with prejudice. Right. But. The dismissal with respect to the ADA, and I understand that part of it was sanctions as well, but if the underlying action itself was not frivolous, but for the bad faith finding. Right. Then there wouldn't have been a basis to dismiss that. Right. But for the bad faith finding, in other words, based on. Right. Well, based on standing. But what I'm saying is if if. There were not a basis for concluding that standing was lacking. Then, but for the bad faith basis, there would not be a basis to dismiss count one. Right. Dismissal without prejudice, if there was insufficient allegations or testimony supporting stat standing would have been appropriate. Right. OK. So that's why I'm asking you these questions. And that's why I started out by asking you whether, you know, what things in particular were the factual findings that Judge Huck made with respect to the ADA standing? That's the reason why I understand the bad faith part, you know, and perhaps that's enough of a reason to dismiss the ADA claim. It's certainly enough to dismiss the FCRA claim, which has a failure to exhaust anyway. And a concession that that was frivolous. But I'm interested in the ADA. You know, what specifically did you understand, Judge, that the district judge's findings to go to on the ADA claim? And I found them specifically to go to the fact that he had no real concrete intent to return to this specific to the gas stations alleged, and that he admitted that he did not regularly go to these gas stations. I understand your point, Your Honor, on the vicinity of the where the gas stations are. But my reading of Houston and other cases, opinions issued by the. That's my concern. Right. Because. What you're arguing necessarily would require us to conclude that. That. The mere fact that someone does not decide in advance a concrete written in stone plan to go to a gas station 26 miles away from his house, even if he regularly goes to that area and could reasonably be expected to need to fuel up at some point, would not ever be able to establish standing for an ADA claim at that particular gas station, even if it is in an area that is right in or near the place that he regularly visits. And that's what my concern is. So I guess maybe the more direct way to ask you is, are there factual findings that would support Judge Huck's conclusion that this needs to be dismissed on standing grounds? That do not necessitate are relying on the fact that he did not that Mr. Johnson did not specify that he intended to visit a particular gas station. I'd say some of the facts and the testimony going to that issue, I think, were insufficient, insufficient. But he showed the Metro Zoo at annual pass, but then didn't give any testimony as to. I like to see a certain exhibit at Metro Zoo and I go I tend to go on these days or I like to go on holidays. As far as the pharmacy testimony, Mr. Johnson produced gave testimony that his partners of medicine was at that pharmacy and needed to be picked up. And that there was a receipt showing that. But again, there was no other testimony corroborating Mr. Johnson's position or allegations as far as that and no concrete facts showing, OK, I'm going to go to the pharmacy on this day and I will get gas in the area and it might include the gas station at issue. So I think Judge Huck's findings he in the line of questioning of Mr. Johnson, he he went through all of those issues about I don't know if there was enough with the Metro Zoo area, but he asked him and it was do you go to all these locations on a regular basis? Do you? So do you go? Are you telling me you go to all these locations on a regular basis? All 26 locations spread throughout Miami-Dade County and Fort Lauderdale, to which Mr. Johnson answered not on a regular basis. No, I don't think all of them on a regular basis. But if I go and if I need gas, I need gas. And I felt my reading of the record is that once that testimony was out, then Judge Huck made the findings that he lacked standing under the Houston factors. May I ask? I know you're over time, but we're going to make you work in this volunteer position taken. So one of the things that worried me about this sanction order is the application outside of any court outside of Florida. Is that I mean, do you have any case law that says that a judge sitting in the southern district of Florida can, you know, control filings in Wisconsin or California, Italy? And I do, Your Honor. This court has actually affirmed injunctions similar to the one entered with the judicial prescreening. As far as filings in Traylor versus Atlanta, an injunction was affirmed regarding an employee that sued an employer. In Henry McDonald. Do you have a site for the Traylor versus Atlanta? Traylor versus Atlanta. That's and yes. And I actually have one where this court enforced an injunction entered by a Connecticut court. Martin Trigona versus Shaw was a 1983 action filed by a woman in the name of her minor grandchildren. And it was this court enforced an injunction affirmed the district court's enforcement of an injunction entered by a Connecticut district court requiring a judicial prescreening before filing cases. We also have Ricard. I don't know if you have the sites right there with you or no. I can get them. No, I really am going to make you work. Sorry. I just sometimes I go back and I can't. Okay. Okay. Traylor versus Atlanta is 805 F second 1420. Thank you. Henry McDonald is 489 US 180. Martin Trigona is 986 F second 1384 and Ricard versus Prudential is 307 F third 1277. Very helpful. One more Cofield versus Alabama Public Service Commission. And that is nine thirty six F second five hundred and twelve. Very helpful. Thank you so much. You're welcome, Your Honor. I think unless any further questions. Thank you. Thank you. Mr. Scoff, Amy. Yes, Your Honor. Thank you. First of all, Judge Martin, as to your questions, counsel cited a couple of the cases that I've cited in my initial brief. I would also like to cite Miller versus Donald. I don't know if she did that. Five forty one Fed third ten ninety one. And Smith versus the United States, which is three eighty six Fed appendix eight fifty three. And all those cases are different from our case because in every one of those cases dealt with a particular party who was filing vexatious lawsuits and motions harassing a particular defendant. Not a situation like this where my client, who was admittedly a tester under the ADA, was filing lawsuits against individual lawsuits and not vexatious lawsuits or repeated motions to try to beat down the opposition, as were the as were the cases that were cited by amicus. Judge Rosenbaum, as to as to your series of questions, if I may. On on May the 30th. I'm sorry. On May the 9th, which is which is the initial hearing. And that was that turned out to be a sanctions hearing. Mr. Johnson not having any notice that there was that there would be any questions about the substance of any of the complaints was asked by by the judge about him visiting the various gas stations. That that the court had had looked at. And Mr. Johnson truthfully said that as to the Okaris gas station, that he used to go there every month because that is where a block away he had to pick up his partner's medication. And likewise, at the other 27th, every gas station was the one that trust. Now, amicus argued to you that that the reason why Judge Huck disbelieved Mr. Johnson on those two matters, which were, by the way, the only two before him, not the other 24, was that there was no corroboration. Well, that is inaccurate. I would direct the court's attention. I made two filings in this case at docket entry number 80 and I think docket entry 35. I specifically as to as to the Okaris gas station, what ended up happening? Well, I submitted the the the pharmacy records for I think it was about a seven or eight month period like clockwork at the end of the month. Every single month, Mr. Mr. Johnson would go to that, would go to that drive to that particular location. And I showed a map. I provided a map of the location of where that clinic was versus where the Okaris gas station was, which was a block away. So that was fully corroborated. And yet the district court made it made an opposite finding because he found himself that it was de minimis for for there to be. Well, I know he talked about it being de minimis, but it didn't seem to me that he ruled on that basis. It looked to me like he ruled exclusively on the standing basis. Is there something that I misunderstood there? Well, I think well, sure. And if it was on the standing basis, judge, actually, I think it was on both. But but assuming it was only on the standing basis, that would mean that that Mr. Johnson would not have met any of the or all of the Houston for Houston categories. And we did. And as to the as to the second gas station, we provided the the Metro Zoo annual pass, which is where he would go on an annual basis. And and the gas station there was right near right by Metro Zoo. So consequently, you know, I hope I've answered or at least I've clarified that particular matter in your honor's mind. Finally, and I I'm running out of time with respect to to the the sanctionable conduct, which was which was count to. There is absolutely no evidence here that Mr. Johnson knew that his lawyer was filing a count to and was doing so unethically. In other words, there is there is absolutely no evidence here that that Denon, who was responsible for making all of the filing decisions. And I submitted the retainer agreements in all of these all of these relevant cases to show that that that that that Johnson knew that what his lawyer was doing would be sanctionable conduct. Because as far as Johnson knew, you know, his lawyer was was making these making these filing decisions. I don't know if the court has any other questions. Yes. Yes. I just was going to point out that you you need to wind it up. Your your time has expired. I don't know if you have anything. Any final words for us? Well, I just want to thank the court for allowing me to appear in this manner. I would much rather be there than here. Well, we would love to have you here. We consider your efforts to be with us to be Herculean. And we you are very much in our thoughts and we hope you get nothing but good news and good health in the future. Well, thank you. I very much appreciate what the panel's consideration is. We're thinking of you. I think we've got your case. All right. All right. All right. Thank you. Thank you. All right. We've got your case. Oh, I'm sorry. I. OK. Yeah, I thought that was right. All right. So we're done with this one. Mr. Ruiz, thank you for letting us recruit you to help us with this case. We appreciate the hard work you obviously did. And thanks to all counsel. We've got the case and.